F I L E D
Clerk
District Court

JUN 12 2026

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| RUI LI, | Case No. 1:26-cv-00011 |
| Petitioner, | **DECISION AND ORDER** |
| | **GRANTING PETITION FOR** |
| v. | **WRIT OF HABEAS CORPUS** |
| SERGIO ALBARRAN, Acting Field Office Director, San Francisco Field Office, Immigration and Customs Enforcement; TODD LYONS, Acting Director, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, Acting U.S. Attorney General; and ANTHONY TORRES, Commissioner of the CNMI Department of Corrections, in their official capacities, | |
| Respondents. | |

Before the Court is Petitioner Rui Li's ("Li") petition for writ of habeas corpus, filed on May 20, 2026. (Pet., ECF No. 1.) Li alleges that the Respondents' failure to provide a bond hearing after his arrest and detention violates both: 1) 8 U.S.C. § 1226(a) and its implementing regulations, as he is not an "alien seeking admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A); and 2) his Fifth Amendment right to due process because of his prolonged detention. (*Id.* ¶¶ 54–67.) Accordingly, Li requests that the Court "[i]ssue a Writ of Habeas Corpus

ordering Respondents to schedule a bond hearing before an IJ and ordering that the IJ may not summarily deny bond at such hearing[.]" (*Id.* at 10.)

The day after the petition was filed, the Court issued an order to show cause why the petition should not be granted, setting briefing deadlines and a hearing on the matter. (ECF No. 2.) The Court granted Respondents' unopposed motion to extend the briefing deadlines and hearing date, in order to allow Respondents sufficient time to gather and review Li's immigration records. (ECF Nos. 4–5.) Respondent Anthony Torres, Commissioner of the CNMI Department of Corrections, timely filed his response by the extended deadline (ECF No. 8), as did Respondents Sergio Albarran, Acting Field Office Director, San Francisco Field Office, U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, Acting Director, ICE; Markwayne Mullin, Secretary, U.S. Department of Homeland Security; and Todd Blanche, Acting U.S. Attorney General (collectively, the "Federal Respondents") (US' Resp., ECF No. 11)—the Federal Respondents attached six exhibits to supplement their response. (ECF Nos. 11-1–11-6.) Li filed his reply (Reply, ECF No. 12), supported by two exhibits (ECF Nos. 12-1–12-2). The day before the hearing, the Federal Respondents filed an additional two exhibits (ECF Nos. 15-1–15-2), which the Court considers for the purposes of this order. On June 3, 2026, the Court held a hearing[1] on the petition and took the matter under submission. (Mins., ECF No. 16.)

For the following reasons, the Court now GRANTS Li's petition for writ of habeas corpus because he is subject to discretionary detention under 8 U.S.C. § 1226(a), not mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

//

---

[1] Respondent Torres did not appear, as the Court had earlier granted his unopposed motion to waive both his own and his counsel's appearance at the hearing. (*See* ECF Nos. 9–10.)

## I.    BACKGROUND

Li is a citizen of the People's Republic of China, currently detained at the Commonwealth of the Northern Mariana Islands ("CNMI") Department of Corrections under the physical custody of the Respondents. (Pet. ¶ 1.) On August 22, 2024, Li was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) under the CNMI-only parole program; his parole was valid until September 5, 2024. (*See* Pet. ¶ 2; US' Resp. 8; NTA 1, ECF No. 11-2.)

Around November 2024, Li submitted an I-589 Application for Asylum and for Withholding of Removal to the United States Citizenship and Immigration Services ("USCIS"). (Pet. ¶ 15.) USCIS issued Li an Employment Authorization Document around June 2025. (*Id.* ¶ 16.) ICE detained Li on February 13, 2026, and he has remained in detention since. (Pet. ¶ 3; *see* US' Resp. 9.) At the time of Li's detention, USCIS had not yet adjudicated his application for asylum. (Pet. ¶ 16.)

One day after he was detained, Li was placed into removal proceedings upon the filing of a notice to appear ("NTA") with the immigration court. (*See* US' Resp. 9; NTA 1.) The NTA identified Li as an "arriving alien" and charged him with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (NTA 1, 4; US' Resp. 9.) Around March 18, 2026, Li applied for release on bond. (Pet. ¶ 6.) The immigration judge ("IJ") denied Li's request for lack of jurisdiction without citing any legal authority for the decision. (IJ Order, ECF No. 11-3; US' Resp. 9.) Petitioner contends the legal position of the IJ and of the Board of Immigration Appeals ("BIA") is that a non-citizen who has not been admitted into the United States is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A), and that an IJ has no authority to release such a non-citizen on bond. (Pet. ¶¶ 7–8.)

In his removal proceedings before the IJ, Li is applying for relief in the form of withholding of removal and/or relief under the Convention Against Torture for fear of being returned to China. (Pet. ¶ 17; US' Resp. 9.) Li does not contest that he is removable, nor does he challenge any part of the process by which his removability is determined. (*See* Mins.; Reply 4.) Li's individual removal hearing was originally set for June 4, 2026 (*see* Pet. ¶ 20; US' Resp. 9), but as the Court understands, the individual hearing has since been continued to June 30, 2026 because of the reassignment of Li's immigration case to a new IJ (Reply 1; *see* ECF Nos. 12-1–12-2), and to allow Li's immigration counsel additional time to prepare for the individual hearing (*see* ECF Nos. 15-1–15-2). As such, there is currently no removal order, preliminary or final, in Li's immigration proceedings. (*See* Pet. ¶ 19.)

## II.   LEGAL STANDARD

The petition seeks a writ of habeas corpus. Title 28 of the United States Code § 2241 provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence." *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25CV3598-LL-BJW, 2026 WL 143150, at *1 (S.D. Cal. Jan. 20, 2026) (citing *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1228, 1290 (9th Cir. 1976)).

## III.   DISCUSSION

For the reasons detailed below, the Court determines that the provisions of the Immigration and Nationality Act—as amended by the Illegal Immigration Reform and Immigrant

Responsibility Act—do not preclude this Court's jurisdiction to decide Li's statutory challenge to his mandatory detention, and that he is entitled to a bond hearing as a noncitizen subject to discretionary detention under 8 U.S.C. § 1226(a). Because the Court grants Li's petition for writ of habeas corpus on this basis, it does not reach his constitutional challenge to his prolonged detention.

**A. The Court has jurisdiction to consider Li's statutory challenge to his mandatory detention.**

The Federal Respondents argue that as a threshold matter, Li's claims and requested relief are jurisdictionally barred under 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9). This Court disagrees.

**1. Section 1252(g) does not bar jurisdiction because Li's mandatory detention does not "arise from" any of the three actions listed in that statutory provision.**

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" The language of this provision does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Rather, "[t]he provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482 (1999)). "'There are of course many . . . decisions or actions that may be part of the deportation process' not implicated by § 1252(g), 'such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the

adjudication, and to refuse reconsideration of that order.'" *Id.* (quoting *AADC*, 525 U.S. at 482). Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9.

The Federal Respondents argue that Li is challenging "the government's decisions to charge him with removability and detain him, which arise from the decision and action to commence removal proceedings against him." (US' Resp. 11 (internal alterations, quotations, and citation omitted).) The Federal Respondents argue specifically that the Court should apply the reasoning of the District Court of Hawaii in *Wang v. Derr*, No. CV25-00231 JAO-RT (D. Haw. July 16, 2025). (*Id.* at 13–14; *see Wang*, ECF No. 11-5.) In *Wang*, the petitioner had been detained on June 2, 2025, and he challenged his designation as an "arriving alien," which subjected him to mandatory detention without a bond hearing. (*Wang* 2, 5.) The *Wang* petitioner filed his original petition for writ of habeas corpus the day he was arrested and detained, and filed his amended petition a few days later. (*Id.* at 4–5.) The district court issued its decision on July 16, 2025, finding that "when detention begins with the commencement of removal proceedings, courts lack jurisdiction to review a challenge to the detention based on § 1252(g)." (*Id.* at 17.)

The Court finds *Wang* distinguishable. Unlike the petitioner in *Wang*, Li does not challenge his designation as an arriving alien in this Court. He is only challenging the legality of the government's decision to apply 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention provisions— which apply to "applicant[s] for admission" who are "seeking admission." Li's claim raises a discrete, "purely legal question" about whether he falls within the class of individuals defined at section 1225(b)(2)(A) that "does not challenge the Attorney General's discretionary authority." *See Ibarra-Perez*, 154 F.4th at 996 (internal citations omitted); *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1312 (W.D. Wash. 2025) (finding § 1252(g) did not bar district court's jurisdiction to

decide whether § 1225(b)(2)'s mandatory detention provisions applied to plaintiffs). Federal courts have jurisdiction to consider such legal questions "even if the answer . . . forms the backdrop against which the Attorney General later will exercise discretionary authority." *See Ibarra-Perez*, 154 at 996 (internal citations omitted). Thus, because the Federal Respondents' "broad reading of § 1252(g) would lead to a result that is not contemplated in the statute and that has been disavowed by the Supreme Court," the Court concludes that Li's claim does not concern discretionary action that is jurisdictionally barred by section 1252(g). *See Rodriguez*, 802 F. Supp. 3d at 1313 (quoting *Ibarra-Perez*, 154 F.4th at 997–98).

**2. Similarly, section 1252(b)(9) does not bar jurisdiction because Li challenges the legality of his *mandatory detention*, not any part of the process by which his *removability* will be determined.**

Section 1252(b)(9) mandates that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order . . . ." Unlike section 1252(g), section 1252(b)(9) is not a "jurisdiction-stripping statute that . . . foreclose[s] *all* judicial review of agency actions." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). "Instead, the provision[] channel[s] judicial review over final orders of removal to the courts of appeals." *Id.* (internal citation omitted). "By its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal." *Nadarajah v. Gonzalez*, 443 F.3d 1069, 1075 (9th Cir. 2006), *abrogated on other grounds by Jennings*, 528 U.S. 281 (quoting 8 U.S.C. § 1252(b)(9)); *J.E.F.M.*, 837 F.3d at 1032 (explaining the Ninth Circuit's prior holding in *Nadarajah*). "Therefore, in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the

district court, and on appeal to [the Ninth Circuit], pursuant to 28 U.S.C. § 2241." *Nadarajah*, 443 F.3d at 1076.

Under *Jennings* and *Nadarajah*, the Court has jurisdiction to review Li's statutory challenge not withstanding section 1252(b)(9). In *Jennings*, habeas petitioner Alejandro Rodriguez had been detained under for over three years before "he filed a habeas petition in the District Court for the Central District of California, alleging that he was entitled to a bond hearing to determine whether his continued detention was justified." 583 U.S. at 289–90. On the jurisdictional issue, the Supreme Court wrote:

> For present purposes, it is enough to note that [the habeas petitioners] are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar.

*Id.* at 294–95.

Here, section 1252(b)(9) does not limit the Court's jurisdiction over Li's statutory challenge because there has been no final order of removal, and because his legal claim does not involve reviewing an order of removal, challenging the decision to detain him *in the first place* or seek removal, or any part of the process by which removability will be determined. *See Nadarajah*, 443 F.3d at 1076; *Jennings*, 583 U.S. at 294–95. Instead, Li's challenge is to the legality of his placement in mandatory detention proceedings, and the lack of a bond hearing. Again, the district court's reasoning in *Wang v. Derr* is distinguishable because in that case, the petitioner challenged his designation as an arriving alien. (*Wang* 2, 5, 30.)

**B. Having resolved the jurisdictional issues, the Court holds that Li is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and is instead subject to 8 U.S.C. § 1226(a) and entitled to a bond hearing.**

8

The Federal Respondents contend that Li is properly detained under section 1225(b)(2)(A) and is not entitled to a bond hearing due to his status an "arriving alien"—defined under 8 C.F.R. §§ 1.2 and 1001.1(q)—who was paroled into the country. (US' Resp. 6–8.) Further, the Federal Respondents' position is that Li is an "applicant for admission" who is "seeking admission" within the meaning of section 1225(b)(2)(A). (*Id.* at 18–19.)

The Court now holds that section 1225(b)(2)(A) does not apply to noncitizens like Li. In so holding, the Court adopts the reasoning of the hundreds of district courts and three circuit courts[2] that have just recently found "applicants for admission" are not subject to mandatory detention under section 1225(b)(2)(A) unless they are also "seeking admission." *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026); *Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). Because Li is not seeking admission, the discretionary detention provisions at section 1226(a) govern, and he is entitled to a bond hearing. Before detailing its analysis, the Court provides a brief overview of the relevant detention statutes.

### 1. Overview of Pre-removal Detention Statutes, 8 U.S.C. §§ 1225(b)(2)(A) and 1226(a)

Both 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1226(a) govern pre-removal detention proceedings. However, while section 1225(b)(2)(A) requires mandatory detention, section 1226(a) permits detention or release on bond or probation. *See Lopez-Campos*, 175 F.4th at 720. Additionally, in *Jennings*, the Supreme Court summarized that "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country" under 8 U.S.C. §

---

[2] The Ninth Circuit has not yet spoken on the issue.

1225(b)(2). *See* 583 U.S. at 289. "It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings" under 8 U.S.C. 1226(a). *See id.*

Section 1225(b)(2)(A) reads:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . .

Section 1226(a) states that "on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Pending such decision, the Attorney General may detain the alien, or release him on bond or conditional parole. § 1226(a)(1)–(2). "This process includes the right to a bond hearing before an immigration judge." *See Rodriguez*, 802 F. Supp. 3d at 1322 (citing 8 C.F.R. § 1236.1(d)).

As to cases that are subject to mandatory detention, courts within the Ninth Circuit have interpreted 8 U.S.C. § 1225(b)(2)(A) to contain three requirements: "an 'examining immigration officer' must determine that the individual is (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *E.g.*, *Elias v. Knight*, 817 F. Supp. 3d 970, 982 (D. Idaho 2025) (citing 8 U.S.C. § 1225(b)(2)(A)). Other circuit courts agree. *See e.g.*, *Alvarez*, 175 F.4th at 1269.

### 2. Li is not "seeking admission" and thus section 1225(b)(2)(A) does not apply.

Here, as confirmed during the hearing on the petition, both parties agree that Li is an "applicant for admission" within the meaning of section 1225(b)(2)(A). However, they disagree on whether Li is "seeking admission," and thus, whether he is subject to mandatory detention. The Federal Respondents, relying on the Supreme Court's decision in *Jennings*, argue that "aliens seeking admission and applicants for admission [are] virtually indistinguishable[,]" such that all applicants for admission are subject to mandatory detention under section 1225(b)(2)(A). (*See* US'

Resp. 18–19.) Li disagrees with the Federal Respondents' characterization of *Jennings*, and argues he is not seeking admission within the meaning of the statute because he is already present in the United States, and because he is applying for relief in the form of withholding of removal in his immigration proceedings rather than for admission. (*See* Pet. ¶¶ 30, 67; Reply 4–5.)

The Court rejects the Federal Respondents' interpretation, which conflates the terms "applicant for admission" and "alien seeking admission," and in so doing, fails to give effect to each word of the statute. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000) (internal quotations and citation omitted). Instead, the Court follows the reasoning of other district and circuit courts which have interpreted the terms "applicant for admission" and "alien seeking admission" as separate requirements that an individual must meet before being subject to mandatory detention under section 1225(b)(2)(A). As the Second Circuit explained in *Da Cunha*, "if the government were right that 'applicant for admission' is a subset of 'seeking admission,' there would have been no reason for Congress to use both." 175 F.4th at 77. Based on a plain textual reading, the Second Circuit determined that section 1225(b)(2) applies only to noncitizens who are present and have not been admitted, and are requesting lawful entry into the United States after inspection and authorization. *Id.* at 74. The Second Circuit further explained that other statutory provisions, legislative history and purpose, in addition to prior decades of executive practice and ensuing Congressional silence supported its reading. *See id.* at 78–93. Lastly, *Da Cunha* expressly rejected the reading of *Jennings* presented by the Federal Respondents in this matter; in *Jennings*, "the Court left no doubt as to its view regarding the differences between Sections 1225 and 1226, . . . because it repeated later in the opinion that Section 1226 'applies to aliens already present in the United States.'" *Id.* at 84 (quoting *Jennings*, 583 U.S. at 303).

11

Here, Li is not seeking admission. The Second Circuit and other Ninth Circuit district courts have interpreted the term seeking admission to mean presently pursuing lawful entry into the United States after inspection and authorization by an immigration officer. *See Moya v. Blanche*, No. 2:26-cv-00675-APG-DJA, 2026 WL 1481604, at \*6 (D. Nev. May 27, 2026) (citing *Da Cunha*, 175 F.4th at 74). In *Da Cunha*, the Second Circuit found that the petitioner—who had entered the country unlawfully twenty years ago and was now seeking only relief from removal— was not "seeking admission" and thus section 1225(b)(2)(A) did not apply. *Da Cunha*, 175 F.4th at 74. Similarly here, Li was paroled—not admitted—into the United States in 2024, has remained in the country ever since, and is now seeking only relief from removal in his immigration proceedings. Thus, he is not seeking admission and section 1225(b)(2)(A) does not apply.

### 3.   Li's status—as an "arriving alien" whose parole under the CNMI-only program had terminated—does not affect the Court's analysis.

A substantial part of the Federal Respondents' response relies on Li's status as an "arriving alien" as defined under 8 C.F.R. §§ 1.2 and 1001.1(q). (*See* US' Resp. 8.) The regulatory provisions define an arriving alien as "an applicant for admission coming or attempting to come into the United States at a port-of-entry" and specifies that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." *See* 8 C.F.R. §§ 1.2, 1001.1(q). The Federal Respondents implicitly invoke the "entry fiction" doctrine with respect to parolees, which provides that an alien paroled into the United States pending a determination of his admissibility is not considered "within the United States" for the purposes of immigration law. *See Ma v. Barber*, 357 U.S. 185, 190 (1958) (alien arrived at U.S. port-of-entry, held in custody, then released on parole pending determination of her citizenship claim); *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995), *superseded by statute on other grounds* (explaining the entry fiction doctrine).

The Court sees no reason why Li's designation as an arriving alien for purposes of the removal proceedings should affect its analysis. The relevant inquiry is whether Li is "an applicant for admission" and "an alien seeking admission" within the meaning of section 1225(b)(2)(A), which prescribes mandatory detention. The term arriving alien is not defined in the INA statute. Both parties agree that Li is an applicant for admission, and under the federal regulations, arriving aliens are a sub-category of applicants for admission. *See* 8 C.F.R. §§ 1.2, 1001.1(q). The Federal Respondents assert that "[i]mmigrants classified as arriving aliens are [also] deemed to be seeking admission into the United States[,]" but cite no legal authorities to support this conclusion. (*See* US' Resp. 10.) "[P]arole status speaks only to whether [Li] has been admitted, not whether he was *seeking* admission at the time of his detention . . . as that term is used in Section 1225(b)(2)(A)." *See Sarmiento Guerrero v. Noem*, 815 F. Supp. 3d 181, 188–89 (E.D.N.Y. 2025). Following this logic, district courts throughout the country— including Ninth Circuit district courts, have declined to consider the termination of an individual's parole as necessarily requiring mandatory detention. *See, e.g., id.*; *Moya*, 2026 WL 1481604, at *6–*7 ("termination of [petitioner's] parole do[es] not mandate his detention under § 1225(b)(2)(A)"); *Rodriguez-Acurio v. Almodovar*, 811 F.Supp.3d 274, 311 (E.D.N.Y., 2025) (finding termination of § 1182(d)(5)(A) parole did not require mandatory detention; *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 402 (E.D.N.Y. 2025) (same). Here, as the Court has already explained, because Li is seeking relief from removal—not admission into the country, he is not seeking admission within the meaning of section 1225(b)(2)(A). Neither his designation as an arriving alien nor the termination of his parole impacts the Court's conclusion.

Lastly, the Federal Respondents argue that the exceptionality of the CNMI-only parole program requires mandatory detention of out-of-status parolees, in order to protect national

security and the safety of community members. (*See* US' Resp. 6–7.) The Federal Respondents further argue that "[w]ithout [this] strict adherence, the islands would be absent a defense against high-risk entrants from China, and would have to forgo any ambition to have a CNMI-Only Parole program that gains the advantage of visitors, but lessens their ability to enter the community or to stress the national immigration system with custody redetermination bond hearings." (*Id.* at 7–8.) However sensible this line of reasoning may be for policy purposes, the Court is unaware of and the Federal Respondents have not provided any statutory or regulatory basis for treating noncitizens paroled under the CNMI-only program differently from other noncitizens paroled pursuant to 8 U.S.C. § 1182(d)(5)(A). Like other parolees whom courts across the country have been found to be subject to discretionary, rather than mandatory detention, Li was paroled under 8 U.S.C. § 1182(d)(5)(A). (*See* US' Resp. 3.) *See, e.g., id.*; *Moya*, 2026 WL 1481604, at *6–*7; *Rodriguez-Acurio*, 811 F.Supp.3d at 311; *O.F.B.*, 810 F. Supp. 3d at 402.

Further, contrary to the Federal Respondents' representations, statutory provisions governing the CNMI visa waiver program do indeed provide the government with "defense against high-risk entrants." (*See* US' Resp. 7.) Under 8 U.S.C. § 1182(l)(2), aliens applying for a visa waiver to enter the CNMI also waive their own rights—such as their right to contest any action for removal, other than on the basis of an application for withholding of removal or under the Convention Against Torture.[3] Finally, the executive branch's prior long-standing practice of placing noncitizens like Li in discretionary rather than mandatory detention—for five presidential administrations and over three decades (*see* Pet. ¶ 30; Reply 6–7)—undermines the Federal Respondents' concerns.

---

[3] Consistent with these statutory provisions, Li is not contesting his removal but is applying for relief in the form of withholding of removal and/or relief under the Convention Against Torture based on his fear of being returned to China. (*See* Reply 4; Pet. ¶ 4.)

14

**4. Section 1226(a) applies and Li is entitled to a bond hearing.**

Because Li is not seeking admission and section 1225(b)(2)(A) cannot justify his continued detention without a bond hearing, section 1226(a)—which governs the detention of noncitizens arrested within the country—applies. *See Moya*, 2026 WL 1481604, at *7; *Jennings*, 583 U.S. at 303 ("§ 1226 applies to aliens already present in the United States."). Accordingly, he is entitled to a bond hearing before an IJ. *See Moya*, 202 WL 1481604, at *7 (citing 8 C.F.R. § 236.1(d)).

## IV.    CONCLUSION

Li was paroled into the United States under the CNMI-only parole program, and his parole has terminated. Nevertheless, for the foregoing reasons, he is not "seeking admission" within the meaning of the statutory provisions that would subject him to mandatory pre-removal detention. Thus, the Court GRANTS Li's petition for writ of habeas corpus under 28 U.S.C. § 2241 for an individualized bond hearing before an immigration judge. Within fourteen (14) days of this order, pursuant to 8 U.S.C. § 1226(a), Respondents are directed to arrange an individualized bond hearing before a neutral immigration judge in which the Government bears the burden of establishing by clear and convincing evidence that Li is a danger to the community or a flight risk if released. If no hearing occurs within fourteen days of this order, Li shall be released from Respondents' custody.

The Court further ORDERS Respondents to file a status report by **July 3, 2026**.

IT IS SO ORDERED this 12th day of June, 2026.

RAMONA V. MANGLONA
Chief Judge

15